■ HORN WATERPROOFING CORP., Appellant, v HORN CONSTRUCTION CO., INC., et al., Defendants, and SONNEBORN BUILDING PRODUCTS, a Division of CONTECH, INC., Respondent. — In an action to recover damages for breach of contract, plaintiff Horn Waterproofing Corp. (Horn) appeals from a judgment of the Supreme Court, Queens County (Kunzeman, J.), dated February 6, 1984, which granted a motion by defendant Sonneborn Building Products, a division of Contech, Inc. (Sonneborn), for summary judgment dismissing the complaint as against it on the

ground that the action was barred by the Statute of Frauds (see Uniform Commercial Code, § 2-201).

Judgment reversed, on the law, without costs or disbursements, motion denied, and complaint reinstated as against Sonneborn.

Plaintiff, a subcontractor engaged to perform waterproofing work on a New York City Transit Authority construction site, entered into negotiations for the sale by Sonneborn of certain waterproofing material, i.e., hydrocide liquid membrane (HLM). In a telegram dated March 8, 1977, Sonneborn informed Horn that it would "accept the responsibility that HLM will meet the specification for elastomeric compound, section 7, para 7D, 2.2". This reference, apparently, was to the contract between the transit authority and the primary contractor. Subsequently, in a letter dated October 4, 1977 which stated that it was regarding "New York City Transit Authority — Contract #D-20107 Material HLM 1000 and HLM 1300 Quantity approximately 40,000 gallons", Sonneborn informed Horn "This will confirm, our * * * price quotation on the above job, contract #D-20107. Price is $4.50 per gallon, F.O.B. Maspeth, New York both for HLM 1000 and HLM 1300 until completion of job". After some initial difficulty in meeting the contract requirements for HLM, Sonneborn's product was, apparently, accepted by the transit authority and Sonneborn supplied HLM to Horn for approximately one year. It appears, however, that Sonneborn had trouble obtaining consistent approval of its product and Horn eventually stopped ordering HLM from Sonneborn.

Subsequently, Horn brought this action against Sonneborn, among others, alleging that Sonneborn breached its agreement to furnish Horn "with a liquid membrane material which would be approved by the NYCTA [transit authority] and meet the requirements of the specifications of the NYCTA for the aforesaid job". Sonneborn then moved for summary judgment as to it on the ground that the action was barred by the Statute of Frauds. It was Sonneborn's position that the transit authority changed its specifications for HLM sometime in mid-1978 such that HLM 1000 and HLM 1300 were no longer acceptable. According to Sonneborn, since there was no writing to evidence any agreement by Sonneborn to supply material other than HLM 1000 and HLM 1300, Horn could not bring an action based on a promise to meet the *requirements of the specifications* of the transit authority. Noting that subdivision (1) of section 2-201 of the Uniform Commercial Code requires that a writing, to be enforceable must include a quantity term, Special Term granted Sonneborn's motion, holding that: "In this case, al-

though the letter of October 4, 1977 does indicate an approximate quantity, it does so only with respect to 'Material HLM 1000 and HLM 1300', materials which Sonneborn had supplied and was always willing to continue to supply. There is nothing, however, in the letter to evidence an agreement on the part of Sonneborn to supply any and all liquid membrane of NYCTA specifications necessary to complete the project".

Special Term improperly held that the Statute of Frauds barred plaintiff's cause of action. Subdivision (1) of section 2-201 of the Uniform Commercial Code provides: "Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing".

It is clear that, in order to satisfy that Statute of Frauds provision, the writing need not contain all the material terms of the agreement. Indeed, there are only three "invariable requirements" that a writing must meet. "First, it must evidence a contract for the sale of goods; second, it must be 'signed', a word which includes any authentication which identifies the party to be charged; and third, it must specify a quantity" (Uniform Commercial Code, § 2-201, Official Comment No. 1). The primary task of the writing "is 'to indicate that a contract for sale has been made' " (White & Summers, Uniform Commercial Code [2d ed], § 2-4, p 61; see *Iandoli v Asiatic Petroleum Corp.*, 57 AD2d 815). In this case, all three requirements have been met. Sonneborn clearly agreed to supply Horn with its requirements for HLM 1000 and HLM 1300 to an approximate quantity of 40,000 gallons. It also guaranteed that its material would meet the "specification for elastomeric compound, section 7, para 7D, 2.2". Having met the requirements of subdivision (1) of section 2-201, the interpretation of the contract should be reserved for trial. There are remaining issues of fact to be determined, such as whether or not the contract specifications were indeed changed and whether or not Sonneborn's product met the specifications agreed upon in its telegram of March 8, 1977. Accordingly, the determination of Special Term must be reversed. Thompson, J. P., Weinstein, Brown and Boyers, JJ., concur.